771 So.2d 673 (2000)
Tho Tan TRAN
v.
PETROLEUM HELICOPTERS.
No. 00-0051.
Court of Appeal of Louisiana, Third Circuit.
June 28, 2000.
Rehearing Denied September 27, 2000.
Writ Denied December 8, 2000.
*674 Michael G. Hodgkins, Lake Charles, LA, Counsel for Plaintiff/Appellant.
Stephen Roppolo, Fisher & Phillips, LLP, New Orleans, LA, Counsel for Defendant/Appellee.
(Court composed of Judge JIMMIE C. PETERS, Judge GLENN B. GREMILLION, and Judge ELIZABETH A. PICKETT).
GREMILLION, Judge.
This case arises out of an appeal by plaintiff, Tho Tan Tran, claiming that the use of his accrued sick leave by his employer, Petroleum Helicopters, Incorporated (PHI), to supplement his workers' compensation benefits denied him the full benefit of his sick leave under his employment contract. For the following reasons, we affirm.

FACTS
Tran started work with PHI in 1977. As per company policy, employees were allowed to accumulate unutilized sick leave days from year to year up to a maximum of 273 days. As of January 1997, Tran had accumulated 270 sick leave days. On January 17, 1997, he suffered an on-the-job injury which resulted in an award of workers' compensation benefits. Tran was placed on paid leave of absence from January 17, 1997 through July, 20, 1997. He returned to light-duty work on July 21, 1997, and remained on light-duty until May 26, 1998, when his original injury necessitated a return to paid leave. During this period, Tran acquired another fifteen days of sick leave. On October 26, 1998, Tran exhausted his last day of accrued sick leave and his status was changed to unpaid leave. Tran remained on unpaid leave until July 26, 1999, when he was terminated for reaching his 273rd day maximum leave of absence.
Tran's weekly base salary was $689.38 and, in addition, he received a 25% bonus for working a "5 and 2" schedule; thus, his average weekly salary was $861.73 or $172.35 per day.[1] PHI's workers' compensation insurer paid Tran $349.00 per week or $69.80 per work day. To compensate Tran as per its sick leave policy, PHI took his daily rate of $172.35 and subtracted the sum paid by workers' compensation of $69.80, to reach $102.55. Thus, Tran was paid $102.55 per work day in sick leave compensation.
The trial court held that "sick leave" was a conditional benefit that was not vested until an employee was unable to work because of illness and, therefore, did not fall under the term "wages" as contemplated by La.R.S. 23:631 et seq. The trial court further held that PHI's policy neither permitted employees to "cash in" their unused sick days, nor allowed employees to use sick days for reasons other than personal *675 illness. Additionally, the trial court held that PHI's contract of employment with Tran made clear that unused sick days would not be paid in cash at termination of employment. As the trial court's reasoning made the issue of PHI's supplementation of workers' compensation with sick leave benefits moot, the issue was not addressed.
Tran appeals claiming:
(1) the trial court committed error as a matter of law in finding that earned and accrued sick leave is not an earned "wage" and therefore an amount due to an employee upon termination under La. R.S. 23:631 and 23:634;
(2) the trial court committed manifest error in failing to find that forcing an employee injured on the job to forfeit his accrued sick leave in an amount equal to the amount received as workers' compensation benefits constitutes a violation of La.R.S. 23:1163 prohibiting an employer from directly or indirectly collecting back from injured employees, workers' compensation premiums;
(3) the trial court committed manifest error in failing to find that Tran was not covered by the company policy in effect at the time of hire, or, in the alternative, that the new company policy of PHI was violated in that PHI did not pay Tran all of his sick leave prior to termination as mandated by company policy; and
(4) the trial court erred in not finding that forfeiture of accrued sick leave violates Public Policy under Lewis v. Malone & Hyde, Inc., 626 So.2d 531 (La. App. 3 Cir.1993).

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's factual findings unless they are clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). An appellate review is generally concerned with two considerations: 1) whether there exists a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987). After reviewing the record in its entirety, an appellate court may set aside a trial court's factual finding only if it determines the finding was clearly wrong. Stobart v. State, Through Dep't of Transp., 617 So.2d 880 (La.1993).

ASSIGNMENT OF ERROR NUMBER ONE
Tran claims that the trial court committed error in finding that "sick leave" was not encompassed by the term "wage" and, therefore, an amount due pursuant to La. R.S. 631 et seq. La.R.S. 23:631 and 23:634 read, in pertinent part, as follows:
§ 631. Discharge or resignation of employees; payment after termination of employment
A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge.
(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
§ 634. Contract forfeiting wages on discharge unlawful
A. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before *676 the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
These statutes are designed to assure prompt payment of wages upon an employee's discharge or resignation. Boudreaux v. Hamilton Med. Group, Inc., 94-0879 (La.10/17/94); 644 So.2d 619. La. R.S. 23:631(A)(1)(a) states: "[I]t shall be the duty of the [employer] to pay the amount then due under the terms of employment." A contract as a whole must be considered in interpreting each provision of the contract. La.Civ.Code art.2050. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. To ascertain and, thereby, effectuate the common intent of the parties to a contract, the trial court examines each provision of the contract in light of its other provisions, so that each is given the meaning suggested by the contract as a whole. La.Civ.Code art.2050.
We must first look to the wording of Tran's employment contract to determine what he was entitled to and the terms of his employment. Several versions and reiterations of the employment agreement exist in the record. The earliest portion of an employment agreement that could be found in the record was dated July 30, 1984, and stated the following:
g. Sick Leave is accruable up to 273 calendar days. When an employee has used all of this Sick Leave he will be placed on vacation if any has been accrued. If an employee on Sick Leave or Vacation received Workmen's Compensation, he will be paid the difference between this amount and his regular salary. After all Sick Leave and vacation time has [sic] been utilized he will be placed on Leave of Absence without pay.
A January 14, 1994 exhibit entitled "ABSENCE FROM WORK," and containing the subheading "SICK LEAVE," read in relevant part as follows:[2]
(1) Sick leave is provided to compensate an employee for a reasonable length of time in which the employee is unable to perform his job due to illness or accident. Sick leave will be granted to those employees having completed six (6) months employment whose physical condition prevents adequate performance to their assigned duties with the Company.
Also part of the record was a May 5, 1994 document, stating in relevant part:
(7) Sick leave is accruable up to 273 calendar days for employees hired prior to May, 1994. When an employee has used all of this sick leave he will be placed on vacation if any has been accrued. After all sick leave and vacation has been utilized, the employee will be placed on leave of absence without pay.
(8) Sick leave may be accrued monthly for employees with one year seniority. Accrued sick leave will not be paid upon termination.
For the purposes of La.R.S. 23:631, wages are any amounts due under the terms of employment, which are earned during a pay period. Boudreaux, 644 So.2d 619. In addressing whether accrued vacation time constituted wages for the purpose of La.R.S. 23:631 et seq., the supreme court in Beard v. Summit Institute, 97-1784, p. 5 (La.3/4/98); 707 So.2d 1233, 1235, held:
When an employer agrees to pay employees for unused vacation time as a condition of their employment, that accrued vacation pay is compensation that is earned during a pay period under Boudreaux. As such, accrued vacation time is an "amount then due under the *677 terms of employment" and constitutes wages under La.R.S. 23:631.
The supreme court went on to explain that "La.R.S. 23:634 strictly forbids an employer from requiring an employee to forfeit her `wages' upon resignation, and provides that the employee shall be entitled to the wages actually earned up to the time of their discharge or resignation." Id. at 1235-36.
We need not address the issue of whether sick leave is considered a wage for the purposes of La.R.S. 23:631 et seq., because PHI only agreed to pay Tran the difference between his workers' compensation benefits and his regular salary. There was no agreement between the parties that unutilized sick leave had any cash value. Tran received all he was entitled to under the terms of his employment, and we can not find any law, either statutory or jurisprudential, that requires an employer to pay an employee the cash value of unused sick leave. For these aforementioned reasons, we find no merit in this argument.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, Tran asserts that the trial court committed manifest error in failing to find that forcing an employee injured on the job to forfeit his accrued sick leave in an amount equal to the amount received as workers' compensation benefits constitutes a violation of La.R.S. 23:1163. That statute states:
A. It shall be unlawful for any employer, or his agent or representative, to collect from any of his employees directly or indirectly either by way of deduction from the employee's wages, salary, compensation, or otherwise, any amount whatever, or to demand, request, or accept any amount from any employee, either for the purpose of paying the premium in whole or in part on any liability or compensation insurance of any kind whatever on behalf of any employee or to reimburse such employer in whole or in part for any premium on any insurance against any liability whatever to any employee or for the purpose of the employer carrying any such insurance for the employer's own account, or to demand or request of any employee to make any payment or contribution for any such purpose to any other person.
B. Nothing herein shall be construed to prevent any employer from carrying his own insurance towards his own employees; nothing herein shall apply to an employer qualified under the laws of this state to engage in the liability insurance business.
In the similar case of Basco v. State, Through Department of Corrections, 335 So.2d 457 (La.App. 1 Cir.1976), a Civil Service employee was injured in the course and scope of his employment. Pursuant to the following Civil Service rule, the employee's sick leave compensation was used to subsidize his workers' compensation benefits to bring him up to his regular salary:
When an employee is absent from work due to disabilities for which he is entitled to workmen's compensation, he may, at his option use sick leave and annual leave not to exceed the amount necessary to receive total payments for leave and workmen's compensation equal to his regular salary.
In instances in which an employee receiving workers' compensation elected to claim total, weekly sick leave, the employee was required to refund the workers' compensation amount to his employer. The plaintiff contended that the Civil Service rule was invalid as it violated La.R.S. 23:1163. Our colleagues in the First Circuit explained:
The rule in question merely limits the amount of sick leave which may be claimed by an employee receiving compensation for a work related injury. The rule affects only the amount of sick leave an employee may claim in such circumstances; it in no way infringes *678 upon the employee's right to compensation or the amount thereof.
Id. at 461.
The First Circuit went on to say that the employer was recognizing and enforcing the employee's right to sick leave benefits, and that the employer was only limiting the amount of sick leave benefits it would pay under certain circumstances. The appellate court also explained, "We believe that in the absence of lawful agreement to the contrary, an employer may limit and restrict the time, manner and amount of sick leave payments which the employer provides." Id. at 462.
Following the First Circuit's reasoning, we likewise find that Tran was not required to forfeit a portion of his sick leave. On the contrary, the amount of sick leave Tran was entitled to was merely limited in circumstances in which he was receiving workers' compensation. We, therefore, find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER THREE
In Tran's third assignment of error, he claims that the trial court committed manifest error in failing to find that he was not covered by the company policy in effect at the time of hire, or that the new company policy was violated because PHI did not pay him all of his sick leave. Tran relies on the following clause, dated July 30, 1984, as support for his contention that his original employment agreement entitled him to remuneration for unused sick leave: "h. Sick leave may be accrued monthly for employees with one year seniority." The preceding clause, as we have noted, states the following:
g. Sick Leave is accruable up to 273 calendar days. When an employee has used all of this Sick Leave he will be placed on vacation if any has been accrued. If an employee on Sick Leave or Vacation received Workmen's Compensation, he will be paid the difference between this amount and his regular salary. After all Sick Leave and Vacation time has [sic] been utilized he will be placed on Leave of Absence without pay.
Tran's original employment agreement, read in whole, provided for the supplementation of workers' compensation with sick leave. Thus, under his original employment contract, in situations in which he was receiving workers' compensation, he was only entitled to sick leave payments in the amount of the difference between his workers' compensation payments and his regular salary. Additionally, there is little relevant difference between the clauses of the various employment agreement revisions; whether the trial court based its determination on the immediately aforementioned clauses or later revisions is of no consequence. For these reasons, as well as those delineated under the discussion pertaining to assignment of error number two, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER FOUR
In his final assignment of error, Tran contends that the trial court erred in not finding PHI's policy of using a full day of sick leave to supplement his workers' compensation benefits violative of public policy. Tran claims that he was forced to forfeit the portion of his sick leave that was paid to him in the form of workers' compensation. As we have explained, Tran did not forfeit any sick leave; as per his employment agreement, he was merely entitled to less sick leave in instances when he was receiving workers' compensation benefits. Under PHI's company policy, Tran could receive benefits which equaled his full wage whether he was injured on or off the job. Clearly, it was the intent of PHI's company policy that an employee receive his full wage if he became ill or was injured, whether he received those benefits solely through sick leave or through a combination of sick leave and workers' compensation benefits. We, therefore, find no merit in this assignment of error.

*679 CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Tho Tan Tran.
AFFIRMED.
PETERS, J., dissents and assigns written reasons.
PETERS, J., dissenting.
While I generally agree with the majority's analysis of the law applicable to this case, I disagree with the manner in which the majority chooses to apply the law. In his second assignment of error, Tho Tan Tran asserts that the trial court erred "in failing to find that forcing an employee injured on the job to forfeit his accrued sick leave in an amount equal to the amount received as workers compensation benefits constitutes a violation of LSA-R.S. 23:1163." I do not have to reach that issue, since I find the employer's actions violated the employment agreement between Tran and Petroleum Helicopters.
The employment agreement is set forth in the majority opinion. Basically, it provides that Tran could accrue up to 273 days of sick leave, and, in the event he became eligible to draw workers' compensation benefits, he would initially continue to receive his full regular salary. The difference between the amount received as workers' compensation benefits and the regular salary would be derived from the accumulated sick leave and vacation time. If Tran were unable to return to work when the sick leave and vacation benefits were "utilized," he would be placed on leave without pay.
As pointed out by the majority, Tran's daily salary was $172.35, and he received $69.80 per day in workers compensation benefits. I find nothing legally wrong with such a policy. Petroleum Helicopters in fact paid the difference and credited the payment against Tran's accrued sick leave. However, while paying only part of the daily wage normally owed, Petroleum Helicopters reduced Tran's accumulated sick leave a full day for every partial day paid. Because the amount paid by Petroleum Helicopters represented only sixty percent of Tran's daily wage, the employer was able to exhaust Tran's accumulated sick leave forty percent faster than it would have otherwise been used. In other words, had Tran's sick leave been used for an illness not associated with his employment instead of a compensable accident, he would still have had approximately 109 days of accumulated leave at the time Petroleum Helicopters moved him to a leave-of-absence status.
Nothing in Petroleum Helicopter's employment agreement allows it to charge a full day of sick leave when only a partial day is used. Additionally, the agreement specifically states that only "[a]fter all Sick Leave and vacation time has [sic] been utilized" will Tran be placed on leave without pay. (Emphasis added). In my opinion, the employer's policy penalizes the employee for sustaining a work injury for which the Workers' Compensation Act holds it responsible. I find merit in this assignment of error and would reverse the trial court to the extent that I would award Tran an amount representing the remaining forty percent of unused sick leave.
NOTES
[1] Based on Tran's "5 and 2" work schedule.
[2] This provision was also reiterated in an employment agreement dated June 1, 1988.